# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JARED MARTEL WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:17CV1282 JCH |
| EKE GAYDEN, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed April 6, 2020. (ECF No. 126). The motion is fully briefed and ready for disposition.

## BACKGROUND

On July 28, 2012, Plaintiff Jared Williams was a pretrial detainee at the St. Louis City Justice Center ("CJC"), held on charges of assault in the first degree. (Defendants' Statement of Uncontroverted Material Facts ("Defendants' Facts"), ¶ 1). On that day, Plaintiff was escorted to the medical unit on the second floor of CJC by Corrections Officer Jerrell Watson ("Watson"). (*Id.*, ¶ 2).

While Plaintiff was in the medical unit, an inmate named Woods attacked Watson and knocked him unconscious while Plaintiff stood nearby. (Defendants' Facts, ¶ 3). Defendant Brandon House ("House"), who was in the medical unit at the time of the attack, testified that while he attempted to restrain Woods, he heard Plaintiff say, "F--- that, I'm going to go help my n-----." (*Id.*, ¶ 4).[1]

---

[1] Plaintiff denies making the statement attributed to him by House. (*See* Plaintiff's Response to Defendants' Statement of Material Facts ("Plaintiff's Response to Defendant's Facts"), ¶ 4).

A number of correctional officers, including Defendants Eke Gayden ("Gayden"), Juannell Goodwin ("Goodwin"), and Toriano Tate ("Tate"), responded to the medical unit. (Defendants' Facts, ¶ 5). According to Defendants, Plaintiff was verbally abusive, shouting expletives and threats at correctional officers, while being escorted from the medical unit on the second floor to his fifth-floor housing unit. (*Id.*, ¶ 7). Defendants claim that Plaintiff's combativeness necessitated a large officer escort. (*Id.*, ¶ 8).[2]

Plaintiff claims that while he was in the elevator and in the hallway on the way back to his unit, and accompanied by as many as nine correctional officers, he was beaten and punched by Defendants and other individuals he cannot identify.[3] (Defendants' Facts, ¶¶ 9, 12 and Plaintiff's Response thereto). According to Defendants, upon exiting the elevator on the fifth floor, Lt. Terrence Miller ("Miller") informed Plaintiff that due to his combativeness, he was going to be placed in a restraint chair. (Defendants' Facts, ¶ 13). Defendants assert Miller removed the handcuff from Plaintiff's left wrist, whereupon Plaintiff kicked House in the leg and swung his left arm at Miller, striking him in the shoulder. (*Id.*, ¶¶ 16-18).[4] According to Defendants, Plaintiff then lost his balance and fell, striking his head on the floor and wall. (*Id.*, ¶ 19).[5]

Defendants assert that Plaintiff continued to struggle with the officers while on the floor, causing House to fall on top of Plaintiff. (Defendants' Facts, ¶ 20). Defendants maintain House

---

[2] Plaintiff admits he was escorted from the medical unit to his housing unit, but denies that he was verbally abusive or combative. (Plaintiff's Response to Defendants' Facts, ¶¶ 7, 8).
[3] While Defendants claim Gayden remained in the medical unit instead of escorting Plaintiff, Plaintiff offers evidence that Gayden joined in both the escort and the beating of Plaintiff. (*See* Defendants' Facts, ¶¶ 30, 32 and Plaintiff's Response thereto).
[4] Plaintiff denies either kicking House or striking Miller. (Plaintiff's Response to Defendants' Facts, ¶¶ 17, 18).
[5] Again, Plaintiff denies this sequence of events occurred. (Plaintiff's Response to Defendants' Facts, ¶ 19).

issued verbal commands ordering Plaintiff to put his hands behind his back, but Plaintiff was difficult and did not comply. (*Id.*, ¶¶ 21-22).[6] According to Defendants, corrections officers eventually gained control of Plaintiff, and handcuffed him again. (*Id.*, ¶ 24). Plaintiff then was placed in the restraint chair. (*Id.*, ¶ 25).[7] Defendants assert Plaintiff was injured during the attempt to place him in the restraint chair; Plaintiff counters that he already had been injured to the point of losing consciousness prior to his placement in the chair. (*Id.*, ¶ 26 and Plaintiff's Response thereto).

On July 29, 2012, Plaintiff filed an Informal Resolution Request ("I.R.R.") regarding the alleged use of force/assault, stating in relevant part as follows:

> An CO was knocked out by another inmate. I didn't see who did it. So the CO's thought I had something to do with it but I didn't. So about 30 minutes passing, several officers from first shift on July 28th put me on elevator and started to beat me repeatedly. Even when they took me off the elevator they continue to beat me. Then I remember waking up on a stretcher going to hospital.

(*See* Defendants' Exh. E, ECF No. 127-5, P. 1).[8] The I.R.R. is signed by Plaintiff, and dated July 29, 2012. (*Id.*). It further is signed by Constituency Services Unit ("CSU") staff member Terris Henderson, but her signature is not dated.[9] (*Id.*).

---

[6] Plaintiff denies that he was struggling or being non-compliant. (Plaintiff's Response to Defendants' Facts, ¶¶ 20-22).

[7] While Plaintiff does not contest that he was placed in the restraint chair, he claims that he lost consciousness prior to being placed in the chair, and thus is unaware how he was placed there or by whom. (Plaintiff's Response to Defendant's Facts, ¶ 25). Plaintiff further questions how he was placed there while in handcuffs, when Defendants testified that inmates must have their handcuffs removed prior to being placed in a restraint chair. (*Id.*).

[8] Plaintiff attached to his I.R.R. a witness statement from William J. Whaley. (*See* ECF No. 127-5, P. 2).

[9] Ms. Henderson testified that she signed Plaintiff's I.R.R. when she received it, and that she was "not for sure why" she left the date "across from that blank." (*See* Henderson Dep., Defendants' Exh. G, ECF No. 127-7, P. 64:13-18).

The I.R.R. form contains a section labeled "Final Disposition." This portion of the I.R.R. form contains boxes to check indicating the following potential dispositions: I.R.R. resolved; I.R.R. unresolved; I.R.R. withdrawal; unprocessed; I.R.R. abandoned; and request grievance. It further contains the following directive: "You have the right to file a formal grievance. You must file a grievance within five (5) working days from the date you receive this response. Failure to submit a grievance within this time frame constitutes abandonment." Ms. Henderson testified that once an I.R.R. is completed, CSU staff typically will check off the final disposition on the I.R.R. form. (*See* Henderson Dep., P. 26:11-17). The portion of Plaintiff's I.R.R. labeled "Final Disposition" is not completed, however, and Ms. Henderson testified that she could not say why there was no final disposition marked on that particular I.R.R.. (*Id.*, P. 26:7-10).

Ms. Henderson did complete a one-page correspondence regarding this matter, addressed to Plaintiff and dated August 15, 2012. (*See* Defendants' Exh. F, ECF No. 127-6). It states in its entirety as follows:

> I am in receipt of your Informal Resolution Request wherein you contend an investigation regarding excessive force and/or assault from staff members.
>
> I have reviewed your complaint and staff members' notifications regarding the alleged incident. According to the notifications, you were in non-compliance with directives. Inmates must comply with directives as stated in the Inmate Handbook. If you do not comply with the division staff directives, it is considered insubordination. According to policies and procedures staff members must exercise discretion when necessary for compliance.
>
> However, you (sic) alleged incident warranted SLMPD and internal investigators to review the incident. Therefore, all matters regarding this incident are under investigation to review.[10]

---

[10] According to Defendants, SLMPD investigated the incident under report number 12-038473, and requested at large warrants for Plaintiff and another offender. Defendants assert it is unknown what occurred following that request. (*See* Memorandum in Support of Defendants' Motion for Summary Judgment ("Defendants' Memo in Support"), ECF No. 127, P. 10 n. 2).

(*Id.*). Plaintiff notes that nothing in the record indicates he ever received Ms. Henderson's correspondence. (*See* Plaintiff's Response to Defendants' Facts, ¶ 51). Furthermore, as described below the parties disagree as to what, if anything, transpired with respect to Plaintiff's complaint subsequent to the filing of his I.R.R.

Plaintiff filed his original Complaint in this matter on April 6, 2017. (ECF No. 1). In his First Amended Complaint, filed December 20, 2019, Plaintiff lodged the following causes of action against Defendants Gayden, Goodwin, House and Tate: 42 U.S.C. § 1983—Fourth, Fifth and Fourteenth Amendments (Count One); 42 U.S.C. § 1983—Conspiracy (Count Two); 42 U.S.C. § 1985—Conspiracy to Deprive of Rights or Privileges (Count Three); and State Law Battery (Count Four). (ECF No. 115). In an Order entered March 3, 2020, the Court dismissed Counts Three and Four of Plaintiff's First Amended Complaint. (ECF No. 123).

As noted above, Defendants filed the instant Motion for Summary Judgment on April 6, 2020, claiming there exist no genuine issues of material fact, and they are entitled to judgment as a matter of law on Counts One and Two of Plaintiff's First Amended Complaint. (ECF No. 126).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

### I. Exhaustion

During her deposition taken in connection with this matter, Ms. Henderson testified that all inmates receive an orientation covering the Grievance Procedures at CJC upon entering the facility. (*See* Henderson Dep., PP. 32:16-24, 47:11-14, 17-24).[11] Defendants claim that pursuant to the procedure outlined in the Inmate Handbook, a copy of which Plaintiff admittedly received, a detainee begins the redress process by filing an I.R.R. (*See* Inmate Handbook, Defendants' Exh. D, ECF No. 127-4, P. 9; *see also* Plaintiff's Response to Defendants' Facts, ¶¶ 57, 59-60).[12]

---

[11] While Plaintiff contends the record does not indicate that all inmates actually receive the required orientation, he does not deny that he himself received it. (*See* Plaintiff's Response to Defendants' Fact, ¶ 44).

[12] The parties disagree as to what constitutes the first step in the process. (*See* Defendants' Facts, ¶ 45 and Plaintiff's Response thereto). It is undisputed, however, that Plaintiff filed an I.R.R.

If the detainee is dissatisfied with the I.R.R. response, he may file a Grievance, which the Grievance Coordinator is required to review, investigate and respond to in writing within fifteen days. Finally, if the detainee remains dissatisfied, he may appeal to the Commissioner of Corrections within five days of receiving the response to his Grievance. The Commissioner will affirm, modify or reverse the decision within ten days, and only then is the administrative grievance procedure considered exhausted.

As noted above, Plaintiff filed an I.R.R. with respect to the incident at issue on July 29, 2012. (ECF No. 127-5). Ms. Henderson of the CSU responded to Plaintiff's I.R.R. as follows:

> I am in receipt of your Informal Resolution Request wherein you contend an investigation regarding excessive force and/or assault from staff members.
>
> I have reviewed your complaint and staff members' notifications regarding the alleged incident. According to the notifications, you were in non-compliance with directives. Inmates must comply with directives as stated in the Inmate Handbook. If you do not comply with the division staff directives, it is considered insubordination. According to policies and procedures staff members must exercise discretion when necessary for compliance.
>
> However, you (*sic*) alleged incident warranted SLMPD and internal investigators to review the incident. Therefore, all matters regarding this incident are under investigation to review.

(ECF No. 127-6). The parties disagree as to the import of Ms. Henderson's correspondence. Defendants maintain the correspondence was a "response" from the CSU, and thus constituted a final disposition of Plaintiff's I.R.R. (Defendants' Facts, ¶¶ 51-53). Plaintiff counters as follows: "[N]othing on the document states it is the official I.R.R. response that concludes the I.R.R. process or that would have informed Williams that he could now file a Formal Grievance. Rather, it reads like a confirmation of CSU's receipt of Plaintiff's I.R.R." (Plaintiff's Response to Defendants' Facts, ¶ 51). Plaintiff further notes that Ms. Henderson herself testified she

---

with respect to the incident at issue; in fact, he attached a copy of the I.R.R. to his original *pro se* Complaint. (*See* ECF No. 1-2, PP. 1, 6).

"really [couldn't] remember" when asked if she considered the correspondence as "the closure of [Plaintiff's] Informal Resolution Request." (*Id.*, citing Henderson Dep., P. 38:7-12).

During his deposition, Plaintiff testified that he filed "something else" after the I.R.R.. (*See* Plaintiff's Dep., Defendants' Exh. A, ECF No. 127-1, PP. 105:1-6, 127:1-4). He described the filing as a "white paper" (*Id.*), but he produced no documentation to support his claim. The parties dispute whether this "something else" constituted a "grievance" of Plaintiff's denied I.R.R. For their part, Defendants maintain the "something else" was a grievance, and that because Plaintiff failed to file an appeal of the grievance to the Commissioner of Corrections, he did not exhaust his remedies before filing suit. (*See* Defendants' Facts, ¶¶ 55-56). Plaintiff counters that the "something else" could not have been a grievance, because a formal grievance can only be filed once the I.R.R. process is complete, something that never happened in Plaintiff's case. (*See* Plaintiff's Response to Defendants' Facts, ¶¶ 47, 51, 55-56). Plaintiff further maintains that even assuming the second filing was a grievance, he still could not appeal the outcome to the Commissioner, because he never received a response on which he could appeal. (*Id.*, ¶ 56).

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Exhaustion is mandatory under the PLRA, and unexhausted claims must be dismissed. *See Ross v. Blake,* 136 S.Ct. 1850, 1856 (2016); *Johnson v. Jones,* 340 F.3d 624, 627 (8th Cir. 2003).

The United States Supreme Court has recognized at least three circumstances where an administrative remedy is unavailable: "(1) where 'it operates as a simple dead end—with

officers unable or consistently unwilling to provide *any* relief to aggrieved inmates, (2) where the 'administrative scheme' is 'so opaque' as to be practically 'incapable of use'; and (3) where 'administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (quoting *Ross*, 136 S.Ct. at 1859-60). Furthermore, the Eighth Circuit Court of Appeals has excused inmates from complying with grievance procedures "when officials have prevented prisoners from utilizing the procedures,…or when officials themselves have failed to comply with the grievance procedures." *Hahn v. Armstrong*, 407 Fed.Appx. 77, 79 (8th Cir. 2011) (internal quotation marks and citations omitted).

Upon consideration of the foregoing, the Court finds a genuine issue of material fact remains as to whether Plaintiff exhausted the administrative remedies available to him. In other words, while Defendants maintain Plaintiff failed to complete the administrative complaint and prison grievance process with respect to his excessive force claim, because at best he filed only a grievance and not a grievance appeal, Plaintiff asserts it is unclear whether Defendants ever responded to his I.R.R. in the first instance. Without such disposition, Plaintiff maintains his duty to file a grievance and/or grievance appeal was never triggered. As noted above, the Eighth Circuit has excused inmates from complying with the institution's grievance procedures "when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005); *see also Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) ("[Once the prison] failed to respond to [Plaintiff's] IRR, no further administrative proceedings were 'available' to him."). This portion of Defendants' Motion for Summary Judgment will therefore be denied.

**II.     Qualified Immunity**

United States District Judge Rodney W. Sippel of this Court recently provided a detailed analysis of the doctrine of qualified immunity, which the Court quotes at length here:

> Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).
>
> To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question:  (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. *Brown v City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).
>
> "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotations marks and citation omitted). "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).
>
> "To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). Turning first to the question of whether a constitutional right was violated, as a pretrial detainee [Plaintiff's]

> excessive force claim invokes the protections of the Fourth Amendment. *Id.* at 905. "An officer's use of force violates the Fourth Amendment when it is objectively unreasonable, given the facts and circumstances of the particular case, as judged from the perspective of a reasonable officer on the scene." *Id.* at 906 (internal quotation marks and citation omitted). To determine whether the force used was reasonable requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal quotation marks and citation omitted). An officer's use of force against a detainee who is not threatening, resisting orders, or disturbing the safety and security of the institution is not objectively reasonable. *See*, *Atkinson v. City of Mountain View, Missouri*, 2013 WL 462381, at *6 (8th Cir. Feb. 8, 2013); *Shannon v. Koehler*, 616 F.3d 855, 864-65 (8th Cir. 2010).

*Smalley v. Gamache*, No. 4:10CV319 RWS, 2013 WL 1149146, at *2-3 (E.D. Mo. Mar. 19, 2013) (footnote omitted).

Viewing the facts in the light most favorable to Plaintiff, the Court finds a genuine issue of material fact remains with respect to whether Defendants utilized excessive force during the incident in question. If Plaintiff's version of events is to be believed, Defendants beat and punched him while he was in the elevator and in the hallway on the way back to his unit, despite the fact that he remained non-combative and was uninvolved in the attack on Corrections Officer Watson. The Court finds a reasonable jury could conclude that Plaintiff was in compliance with Defendants' orders, and posed no threat to the safety and security of the institution when he was beaten and restrained. *Smalley*, 2013 WL 1149146, at * 3. "Accepting this version of facts, which is not blatantly contradicted by the record, *Scott v. Harris*, 550 U.S. 372, 380 (2007), then any use of force against [Plaintiff] would be gratuitous and a violation of the Fourth Amendment." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989) (officer's use of force violates Fourth Amendment when it is objectively unreasonable given facts and circumstances of particular case); *Hemphill v. Hale*, 677 F.3d 799, 801 (8th Cir. 2012); *Henderson*, 439 F.3d at 502-03 (qualified immunity denied because officer's use of pepper spray on arrestee who had

- 11 -

already been subdued and restrained may have been gratuitous and completely unnecessary act of violence that violated Fourth Amendment)). Because Plaintiff has raised a genuine issue of material fact about whether Defendants violated a constitutional right, Defendants' Motion for Summary Judgment on the issue of qualified immunity must be denied. *Id. See also Henderson*, 439 F.3d at 503-04 (internal quotation marks and citations omitted) ("[W]e agree with the district court that genuine issues of material fact exist as to whether a reasonable officer…would have known his actions violated [plaintiff's] right to be free from excessive force. We need look no further than both parties' sharply conflicting accounts of the circumstances….to find a material factual dispute…While the jury may credit [defendant's] testimony and disbelieve [plaintiff's] testimony at trial, it is not our function to remove the credibility assessment from the jury.").[13]

### III.  Conspiracy

In their Motion to Dismiss, Defendants finally assert Count Two of Plaintiff's First Amended Complaint must be dismissed because Plaintiff fails to plead facts sufficient to show an agreement toward unconstitutional action by Defendants. (*See* Defendants' Memo in Support, PP. 11-13). "In order to prove a conspiracy under § 1983, the plaintiff must show for a particular defendant: (1) a conspiracy between the defendant and at least one other person; (2) an overt act in furtherance of the conspiracy; (3) a resulting injury to the plaintiff; and (4) the deprivation of a constitutional right or privilege." *Robinson v. Hawkins*, 937 F.3d 1128, 1134 (8th Cir. 2019) (citation omitted).

> The plaintiff need not show that each participant knew the exact limits of the illegal plan, but the plaintiff must show evidence sufficient to support

---

[13] The Court recognizes that pursuant to Eighth Circuit law, "[l]iability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Robbins v. Becker*, 794 F.3d 988, 993 (8th Cir. 2015) (internal quotation marks and citation omitted). Again, however, Plaintiff's submissions raise a genuine issue of material fact as to the extent of each Defendant's participation in the alleged incident.

> the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights.  The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a meeting of the minds or understanding among the conspirators to achieve the conspiracy's aims. Because the elements of a conspiracy are generally proved by circumstantial evidence, summary judgment should only be granted where the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided.

*Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016) (internal quotation marks and citations omitted).

Upon consideration of the parties' submissions, the Court finds Plaintiff has alleged specific material facts, sufficient to survive summary judgment, that Defendants reached an agreement to deprive him of a constitutional right or privilege.  *See Helmig*, 828 F.3d at 763. Defendants' Motion for Summary Judgment on Count Two of Plaintiff's First Amended Complaint will therefore be denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment (ECF No. 126) is **DENIED**.

Dated this   13th    Day of August, 2020.

\s\  Jean C. Hamilton
UNITED STATES DISTRICT JUDGE