## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

JARED MARTEL WILLIAMS,

         *Plaintiff,*

v.

         Case No:  4:17- CV-01282-JCH

EKE GAYDEN, et al.,

         *Defendants.*

## PLAINTIFF'S PRE-TRIAL BRIEF

Pursuant to the Court's Order dated August 17, 2020, <u>Doc. 146, ¶6</u>, and any related Order in this case, Plaintiff hereby submits the following pre-trial brief:

### I.      BACKGROUND

Mr. Williams' case in chief will present the following facts.  On July 28, 2012, Jared Williams was a detainee at the St. Louis City Justice Center awaiting trial on criminal charges. That day, a guard escorted Williams to the jail infirmary for a routine medical examination. While Williams waited for his turn to see the doctor, another detainee in the infirmary (Julius Woods) assaulted a guard (Corrections Officer Watson) and knocked him unconscious. A number of other guards rushed to the scene and subdued Woods. Williams played no role in the incident in the infirmary.

As guards escorted Woods back to his cell, they began to beat him unnecessarily. Williams urged the guards to stop beating Woods, and he asked the guards who remained with him in the infirmary why they were not intervening to stop their colleagues from using unnecessary violence. Williams believes that these objections motivated the subsequent use of force against him.

After Woods' departure from the infirmary, a group of guards (including the Defendants and defense witness Sonya White) led Williams out of the infirmary and back toward his cell. He

1

had not yet seen the doctor. Williams was shackled as he returned to his cell. Williams and the guards boarded an elevator to return to the floor on which Williams was housed. While on the elevator (and out of view of potential witnesses), the Defendants and White began to violently hit and kick him.

When the elevator arrived on Williams' floor, the guards temporarily relented, but they resumed their assault in the hallway leading to Williams' housing unit. While the Defendants may have believed that they were out of sight, another detainee—Arvon Brown—witnessed them beating Williams without justification. At no time did Williams act violently or refuse any directives. During the assault in the hallway, Williams was knocked unconscious, and he awoke in the infirmary. After an initial evaluation by jail medical staff, Williams was transferred to St. Louis University Hospital for treatment.

Ayanna Williams (no relation to Plaintiff) was a nurse at the City Justice Center who was present at the facility on July 28, 2012, and provided care to Plaintiff after the assault. Ms. Williams testified in her deposition that she was initially told by a guard that Plaintiff had sustained his injuries by falling down the stairs. Only later was she told that jail staff had inflicted the injuries on Plaintiff. She also testified that Plaintiff had sustained "footprint injuries" on both his chest and his back. Ms. Williams testified in her deposition that these injuries had "stayed with" her because she did not understand how he had sustained them and the injuries were not consistent with what she had been told by jail staff.

## II.    WILLIAMS' CLAIMS

Williams has two remaining claims, each of which is asserted against all Defendants. First, he brings a claim under 42 U.S.C. § 1983 alleging that Defendants used excessive force against him, in violation of the Due Process Clause of the Fourteenth Amendment. To prevail on this

claim, Williams must prove that the Defendants—while acting under color of state law[1]—used force against him, that the force used was excessive, and that the use of excessive force directly injured him. *See, e.g.*, *Wright v. Douglas Cty. Dep't of Corrections*, Case No. 8:20-cv-407, 2021 WL 843464, at *2 (Mar. 5, 2021). Whether the force was unconstitutionally "excessive" depends on whether the force was "objectively unreasonable" in light of the facts of the case. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* The list of factors identified by the Supreme Court in *Kingsley* is exemplary rather than exhaustive. *Id.*

Here, the evidence will demonstrate that the force used by Defendants against Williams was objectively unreasonable under the circumstances. Because Williams was neither aggressive nor resisting, there was no need for any use of force at all. These facts demonstrate that the force used by Defendants against Williams was unreasonable. For similar reasons, Defendants cannot rely on qualified immunity to defend their conduct. *See, e.g.*, *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). Moreover, there is strong reason to believe that Defendants beat Williams into unconsciousness in retaliation for him raising concerns about the use of excessive force against another detainee.

---

[1] Williams understands that there is no dispute whether the Defendants were acting under color of state law at the relevant time.

The evidence will also demonstrate that Williams sustained injuries as a direct result of Defendants' use of unconstitutionally excessive force against him.  Indeed, contemporaneous photographs and medical records will demonstrate that Williams sustained brutal injuries to his head and torso.  Williams will also testify to ongoing effects of the assault that remain to this day.

Williams is also asserting a claim for conspiracy to deprive him of his constitutional right to be free from excessive force.  "To prove a § 1983 conspiracy claim, the plaintiff must show that the defendant (1) conspired with others to deprive him or her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff."  *Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016).  Here, ample evidence will support each of these elements.

With regard to the first, perhaps most relevant is the fact that the Defendants jointly engaged in excessive force against Williams.  *See United States v. Gonzalez*, 906 F.3d 784, 792 (9th Cir. 2018); *United States v. Rorke*, No. 90-485, 1991 WL 165275, at *4 (E.D. Pa. Aug. 22, 1991).  The fact that the Defendants are colleagues with prior existing relationships only strengthens this inference.  *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1192 (11th Cir. 2011).  Moreover, Defendants House and Gayden were jointly involved in a similar instance of excessive force that earned each of them disciplinary action.  *See Jiang v. Porter*, No. 4:15-cv-1008-CEJ, 2015 WL 9480478, at *2 (E.D. Mo. Dec. 29, 2015) (explaining that evidence of "prior dealings between" defendants involving related conduct can support the existence of a conspiracy).

With regard to the second element, the evidence will establish that each of the Defendants engaged in overt acts, namely, striking and kicking Williams without any justification.  And with regard to the third, these overt acts directly inflicted serious physical injuries on Williams, and the

overt acts constitute the conduct that deprived Williams of his constitutional right to be free from excessive force.

## III.    ISSUES TO THAT MAY ARISE AT TRIAL

### A.    Defendants' Failure to Exhaust Jail Administrative Remedies Defense

Defendants contend that Williams filed this lawsuit without exhausting his jail administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). "Exhaustion is an affirmative defense, and failure to exhaust must be proven by the defendants." *Flowers-Bey v. Anderson*, No. 2:19-CV-70-SRC, 2020 WL 4334941, at *2 (E.D. Mo. July 28, 2020). The Court—rather than the jury—will decide whether the Defendants have satisfied their burden to prove failure to exhaust. *See, e.g.*, *Lee v. Wiley*, 789 F.3d 673, 677-78 (6th Cir. 2015) (cited approvingly in *Boyd v. Rechaigl*, 790 F. App'x 53, 54 (8th Cir. 2020) (per curiam)) (collecting numerous cases).

The parties extensively addressed the evidence relating to exhaustion in their summary-judgment briefing, and Williams does not wish to burden the Court with an extensive recapitulation of that discussion. Stated briefly, the documentary evidence and the testimony of Terris Henderson (who supervised the jail grievance process at the relevant time) indicate that the jail never fully resolved Williams' Informal Resolution Request ("IRR"). Although the IRR represents the first step of a multi-step grievance process, the jail's failure to comply with *its* obligation to resolve the IRR prevented Williams from proceeding with the remaining steps and excused him of his obligation under the PLRA to complete those steps. *See, e.g.*, *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001).

**B.      Testimony Regarding 2010 Incidents Involving Defendants House and Gayden**

As noted above, Williams is asserting a § 1983 conspiracy claim against the Defendants, and one element of that claim requires Williams to show that the Defendants conspired with one another.  Courts have previously recognized that evidence that co-defendants previously engaged in similar conduct together can support the existence of a conspiracy.  *See Jiang*, 2015 WL 9480478, at *2 (citing *United States v. Wardell*, 591 F.3d 1279, 1288 (11th Cir. 2009)).

In 2010, Defendants House and Gayden were involved in two incidents together involving excessive force.  In July 2010, both House and Gayden attempted to punch a detainee without justification.  In August 2010, House and Gayden were both part of a group of guards that improperly used a towel to smother a detainee while attempting to put him in a restraint chair. Their joint participation in prior instances of excessive and inappropriate uses of force against detainees provides evidence that the acted jointly in the assault against Williams, thereby providing evidence to support one of the elements of Williams' conspiracy claim.

For the reasons stated, evidence of this prior incident is plainly relevant under Federal Rule of Evidence 401.  There is also no basis for excluding testimony regarding these prior incidents under Rule 403.  Given the inherently secretive nature of conspiracies, their existence often must be proved through circumstantial evidence.  *See, e.g.*, *United States v. Ramirez-Martinez*, 6 F.4th 859, 868 (8th Cir. 2021).  These prior dealings between House and Gayden provide strong circumstantial evidence of the civil-rights conspiracy.  They are particularly important given that Gayden claimed in his deposition that he was not present during the use of force against Williams. The evidence of prior dealings between House and Gayden could provide an important link between Gayden and the conspiracy if the jury were to credit Gayden's claim that he was not present for the assault itself.  To the extent that Defendants believe that evidence of these prior

incidents creates any unfair prejudice, the Court can instruct the jury that the mere fact that House and Gayden engaged in excessive force on prior occasions does not necessarily mean that they did so in this instance.

### C.      Issues Arising from Williams' Status as an Inmate

Williams will ask the Court for several concessions owing to his status as an inmate, in his motions in limine due in approximately ten days.  First, Williams will ask the Court to exclude any evidence of his criminal history or conduct during incarceration other than the fact that he is currently incarcerated and the fact that his incarceration is due to conviction of a crime.  Second, Williams will ask that the Court permit him to wear civilian clothing during trial rather than prison clothing.  Third, Williams ask that his hands not be shackled in front of the jury during trial and that any leg shackles be hidden from the jury's view.  Williams' forthcoming motion in limine will address these issues in further detail.  Williams understands that the Defendants do not oppose the second and third requests.

Dated: September 7, 2021                        Respectfully submitted,

                                                /s/ Matthew P. Diehr
                                                Matthew P. Diehr, #61999MO
                                                Michael Martinich-Sauter, #66065MO
                                                190 Carondelet Plaza, Suite 600
                                                St. Louis, MO 63105
                                                Telephone: (314) 480-1500
                                                Matthew.Diehr@huschblackwell.com
                                                Michael.Martinich-Sauter@huschblackwell.com
                                                **Counsel for Plaintiff Jared Martel Williams**

### CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2021, I caused to foregoing to be filed electronically with the Clerk of the Court and to be served via electronic mail upon all counsel of record.

                                                /s/ Matthew P. Diehr
                                                Matthew P. Diehr, #61999MO