IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JARED WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 4:17-cv-01282-JCH |
| EKE GAYDEN, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## MOTION FOR NEW TRIAL

COMES NOW Defendant Toriano Tate, by and through the undersigned, and pursuant to Federal Rule of Civil Procedure 59, hereby moves the Court to vacate and set aside the judgment entered against him and to grant him a new trial. Defendant Tate's Constitutional right to a fair and impartial jury in this matter was denied to him when Plaintiff's *Batson* challenge to Defendants' peremptory strike of Juror Number 1 was granted despite Plaintiff's failure to meet his mandatory burden to prove purposeful race discrimination, resulting in the seating of a juror who was biased in favor of Plaintiff, an incarcerated person. The violation of Defendant Tate's Constitutional rights caused a judgment to be entered against him, resulting in a "miscarriage of justice" that can only be remedied by a new trial. ***Dindinger v. Allsteel, Inc.***, 853 F.3d 414, 421 (8th Cir. 2017). Accordingly, for the reasons set forth more fully herein and based upon the evidence to be submitted at a hearing on this Motion, Defendant Tate must be granted a new trial by a fair and impartial jury.

Defendant Tate is entitled to a new trial in that Plaintiff's *Batson* challenge regarding Defendants' peremptory strike of Juror Number 1 failed to satisfy the *Batson* three-part analysis, resulting in the seating of a biased juror, in violation of Defendant Tate's Due Process Rights and his Seventh Amendment right to a fair and impartial jury. During *voir dire*[1] Juror Number 1 stated that his brother was incarcerated, and made other statements indicating that he had a mistrust of authority figures in general, and law enforcement in particular. On the basis of these representations, Defendants moved to strike Juror Number 1, who is black, for cause, which the Court denied. Subsequently, Defendants used one of its peremptory strikes against Juror Number 1, as well as Juror Number 21, who is white. Plaintiff objected to Defendants' peremptory strike of Juror Number 1, arguing it constituted a *Batson* violation. Defendants explained that their race-neutral reason for striking Juror Number 1 was his statement that he had an incarcerated family member, and that they had also struck Juror Number 21, who was himself once an incarcerated person, arguing that persons with such a direct degree of intimacy with the experience of being incarcerated would tend to make them unduly sympathetic to Plaintiff and hostile to Defendants. Defendants also noted that they, themselves, are black, and brought their concerns regarding Juror Number 1 to their lawyers' attention and asked their lawyer to strike Juror Number 1. In response, Plaintiff offered nothing to rebut these race-neutral explanations, other than to argue that it would leave only one black person on the eight-member jury, and that the white *venire* person struck

---

[1] The transcript has been ordered and will be introduced at the hearing on this Motion.

by Defendants was unlikely to be seated anyway based on sheer numbers. The Court denied Defendants' attempted use of a peremptory strike against Juror Number 1 on the basis of this challenge.

Defendant respectfully submits that the *Batson* analysis process was not followed with the rigor demanded by *Batson* and its progeny. The *Batson* decision stands for the proposition that the striking of a potential juror for "purely racial reasons" violates the U.S. Constitution. **United States v. Young**, 753 F.3d 757, 779 (8th Cir. 2014). The three-step analysis required by *Batson* is well-known: first, the challenger of a peremptory strike "must make a *prima facie* showing" that the peremptory strike was made "because of race"; second, the party moving to strike must "articulate a race-neutral" reason for the strike; and third, the court must then determine whether the challenger of the strike "has *proven* purposeful discrimination." **Monigan v. Norman**, No. 4:17-CV-2907 NAB, 2021 U.S. Dist. LEXIS 68907, at *11 (E.D. Mo. Apr. 9, 2021) (citing *Batson*) (emphasis added); **Young**, 753 F.3d at 779. The "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the [peremptory] strike." **Rice v. Collins**, 546 U.S. 333, 338 (2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 766 (1995)).

The Eighth Circuit's decision in *Swope v. Razzaq* is a helpful illustration of how the burden-shifting analysis is intended to work. The plaintiff in *Swope* was a black patient who sued his urologist for malpractice after a botched procedure. During *voire dire*, the doctor-defendant used his peremptory strikes to completely

eliminate all black persons from the jury. The patient challenged those strikes under *Batson*, but the trial court denied them, and an all-white jury was seated. The jury returned a verdict for the doctor-defendant. On appeal, the patient argued that the trial court erred in denying his *Batson* challenges to the doctor's creation of an all-white jury. The Eighth Circuit upheld the decision of the trial court. **Swope v. Razzaq**, 428 F.3d 1152, 1155 (8th Cir. 2005).

The Eighth Circuit's analysis began by noting that the trial court correctly found a *prima facie* showing of purposeful discrimination when the strikes had the effect of completely eliminating black persons from the jury. **Swope**, 428 F.3d at 1155. However, the Eighth Circuit noted that this use of all available peremptory strikes only against black *venire* members raised merely the "debatability" of the striking party's potential racial motives. *Id.* In other words, even though the striking party used *all* of his peremptory strikes against black persons, and that this resulted in an all-white jury, this showing alone was insufficient to establish purposeful racial discrimination. Instead, the *Batson* analysis required the court to turn to the striking party to provide race-neutral reasons for striking the black *venire* members. *Id.* at 1154. The reasons proffered by the defendant-doctor were that: one individual was a casino employee, which doctor-defendant claimed meant he would have a "lotto mentality" that would be too plaintiff-friendly; the second was unemployed, which again was argued would make him too plaintiff-friendly; while the third was a "long-time government employee and demographically those persons tend to favor plaintiffs." *Id.* Having found that race-neutral reasons were provided, the court

turned to the patient-plaintiff to demonstrate that these race-neutral reasons were only pretext, and plaintiff's argument was that the proffered race-neutral reasons were irrelevant to the issues to be determined by the jury. *Id.* The Eighth Circuit held that the patient-plaintiff had failed to meet his burden that the defendant's peremptory strikes were motivated by racial bias, noting that plaintiff failed to identify any other similarly-situated *venire* member who was not struck. *Id.* at 1155.

If the *Swope* plaintiff failed to meet his burden, then Plaintiff Williams certainly did as well. As an initial matter, it is not even clear that Plaintiff established a *prima facie* showing of discriminatory animus. Whereas the *Swope* defendant used all of his strikes against black persons, Defendants here did not, and also struck a white person, and even had this Court permitted the striking of Juror Number 1, there would have remained a black person on the jury. But even if it is assumed *arguendo* that Plaintiff did make his *prima facie* showing, Defendants properly demonstrated race-neutral reasons for striking Juror Number 1: that they had moved to strike him for cause, that he had a close relative in confinement, that his statements indicated a possible anti-establishment bias, that there remained on the jury panel a black person in Juror Number 2 whom Defendants did not attempt to strike, and that the black Defendants themselves asked their counsel to strike Juror Number 1. Most important, however, is that Defendants also struck Juror Number 21, a white man, for the exact same reason they attempted to strike Juror Number 1: he was far too closely connected to the perspective of inmates that Defendants feared they would not get a fair trial with him on the jury panel.

The Supreme Court has held that *Batson* does not require that the proffered race-neutral reason be "persuasive, or even plausible" so long as the reason is "*not inherently discriminatory*," **Rice**, 546 U.S. at 338 (emphasis added). None of Defendants' explanations were "inherently discriminatory," and they were certainly more "persuasive" and "plausible" than the *Swopes* defendant's explanations of "lotto mentalities" and government employees.

It was *Plaintiff's* burden to demonstrate that the race-neutral reasons were pretext—essentially, lies—and it was his burden to prove that Defendants' motive in striking Juror Number 1 was "*purposeful discrimination.*" **Monigan**, *supra*, at *11; **Rice**, 546 U.S. at 338 (emphasis added). Plaintiff established neither. In fact, he had an even weaker argument than the *Swope* plaintiff in that Plaintiff Williams objected to *only one* peremptory strike of a black person, whereas the *Swope* plaintiff challenged all three peremptory strikes, Plaintiff Williams would not have faced an all-white jury as did the plaintiff in *Swope*, and Defendants here struck a white person for the same reason they struck Juror Number 1. Plaintiff Williams failed to meet his burden to establish that the Defendants were motivated by "purposeful discrimination" against black persons because the Defendants' striking of Juror Number 1 had nothing to do with his race.

After being seated on the jury, Juror Number 1 demonstrated that Defendants' instincts were correct. During witness testimony Juror Number 1's body language, facial expressions, and non-speech vocalizations such as grunts, groans, and laughs indicated his prejudgment that he would vote in favor of Plaintiff. Although not

discerned during *voir dire* among the mass of tattoos covering the entirety of Juror Number 1's exposed skin, undersigned counsel noticed that what at first he believed was an "X" tattooed on the right temple of Juror Number 1 was apparently two crossed firearms. Juror Number 1's dress—track pants and t-shirts—further evidenced his lack of respect for the seriousness and weightiness of the proceedings, even by today's generously lax standards for attire. Further, Defendants later discovered evidence suggesting that Juror Number 1 was arrested at least once.[2] While the mere fact of an undisclosed arrest on its own is insufficient to disqualify a potential juror, coupled with the entirety of the circumstances, including his statements during *voire dire*, further supports the contention that Juror Number 1 should not have sat upon that particular jury due to a bias against government and law enforcement officials.

    The jury deliberations in this case were, by the jury's own admission, extremely tense. During the first day of deliberations, the jury asked the Court to allow them to go home because their deliberations had gotten so heated. The questions of fact presented to the jury in this case were not particularly complicated, and depended almost entirely on making a determination of which side was more credible. Given the fact that this jury returned verdicts in favor of three of the four Defendants, and awarding Plaintiff $45,000 on a single count against only one Defendant, it is exceedingly likely that this was a compromise verdict reached not upon the merits, but rather to come to an agreement so they could go home. Under the totality of the

---

[2] Again, this evidence is to be introduced into the record before the Court at a hearing on this Motion.

circumstances, Defendant Tate submits that the most likely explanation of the jury's verdict was that Juror Number 1 was never going to agree to vote for a defense verdict, and that Defendant Tate was selected as the vehicle to deliver Plaintiff a consolation prize so that the jurors could end their stalemate.

Where the right to a trial by jury attaches, the Constitution entitles the litigants a fair and impartial jury. **U.S. CONST., Amend VII;** *Haley v. Blue Ridge Transfer Co.,* 802 F.2d 1532 (4th Cir. 1986); *McCoy v. Goldston,* 652 F.2d 654 (6th Cir. 1981). Defendant Toriano Tate was denied this right. Plaintiff failed to meet his burden under the three-part test established by the U.S. Supreme Court in *Batson* that his peremptory strike directed against Juror Number 1 was the result of "purposeful discrimination." *Batson v. Kentucky*, 476 U.S. 79, 93 (1986). The right of litigants to peremptorily challenge prospective jurors is an important and long-standing right of litigants in jury trials, and it is subject only to the limitations established by *Batson* and its progeny. *Swain v. Alabama*, 380 U.S. 202, 219 (1965); *Batson*, 476 U.S. at 98. So long as *Batson* is complied with, the "denial or impairment of the right" to peremptorily challenge is "reversible error without a showing of prejudice." *Swain*, 380 U.S. at 219.

WHEREFORE, Defendant Toriano Tate moves the Court vacate and set aside the judgment entered against him in this Cause, for a new trial, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**


By:      /s/ Steven R. Kratky
Steven R. Kratky,  #61442MO
J. Brent Dulle, #59705MO
Law Department | City of St. Louis
City Hall | Room 314
Saint Louis MO  63103
Tele: 314-622-3361
Fax:  314-622-4956
KratkyS@stlouis-mo.gov
DulleB@stlouis-mo.gov


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on this 28th day of October, 2021.

     /s/ Steven R. Kratky