IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JARED MARTEL WILLIAMS,<br><br>    *Plaintiff,*<br>v.<br><br>EKE GAYDEN, et al.,<br><br>    *Defendants.* | Case No:  4:17- CV-01282-JCH |

**PLAINTIFF'S RESPONSE TO DEFENDANT TORIANO TATE'S
MOTION FOR A NEW TRIAL**

COMES NOW Plaintiff Jared Williams, in response to Defendant Toriano Tate's Motion for New Trial, and hereby states as follows:

**INTRODUCTION**

Counsel for Mr. Tate might have considered ordering a trial transcript in time to review it before filing his Motion for a New Trial, ECF Doc. 220.  ECF Doc. 219 (requesting trial transcript). Mr. Tate irresponsibly misrepresents what occurred during the empaneling of the jury in this matter, misstating facts relevant to the Court's examination and omitting still more.  Counsel details these misstatements below in the factual background section of this motion.

The racially motivated strikes against potential jurors by counsel for Mr. Tate undermine the integrity of the judicial system, and if they had gone unchallenged by Mr. Williams, would have denied both Mr. Williams and any excluded venirepersons their right to equal protection under the Constitution.  Mr. Tate's motion entirely misses the weight of such a Constitutional violation, misstating or ignoring nearly all facts on which the Court relied for its ruling.  Because the Court appropriately set aside the peremptory challenge to Juror #1, Mr. Tate's motion must fail.  This Court should deny Mr. Tate's motion for a new trial.

1

**FACTUAL BACKGROUND**

In the span of only a handful of lines on page two of his motion for new trial, Mr. Tate[1] makes a stunning series of misstatements and omissions, which by clear design paint a flatly untrue version of events. Counsel outlines these below. ECF Doc. 220, pg. 2.

*First*, and most importantly, Venireman #1 who would become **Juror #1 in this case unequivocally did not make "statements indicating that he had a mistrust of authority figures in general, and law enforcement in particular."** ECF Doc. 220, pg. 2. Juror #1 spoke only once, in response to the final *voir dire* question posed by Mr. Tate, as to whether he had a relative who was incarcerated.[2] Juror #1 readily admitted that his brother is incarcerated, but responded firmly and politely to Mr. Tate's subsequent question that this fact would not color his service as a juror. The contention that Juror #1 in any way disqualified himself from jury service in this matter, or made any statements at all bearing on his fitness to serve, is cut from whole cloth.

*Second*, **Mr. Tate did not attempt to strike Venireman #1 / Juror #1 for cause**, contrary to the representations made to the Court. ECF Doc. 220, pg. 2 ("Defendants moved to strike Juror Number 1, who is black, for cause, which the Court denied."). Mr. Tate did not attempt to strike Juror #1 for cause because there was no basis to do so. Juror #1 did not make the statements that Mr. Tate attributes to him in the motion. Taken together, the fiction that Juror #1 made a series of statements indicating mistrust of authority figures but that the Court denied a cause for strike, then denied a peremptory challenge, entirely misrepresents the Court's rulings in this matter.

*Third*, **Mr. Tate did attempt to strike other veniremen for cause, all of whom are African-American**. Conveniently absent from Mr. Tate's motion entirely, Mr. Tate sought to strike for cause

---

[1] For convenience, counsel refers to "Mr. Tate" interchangeably with his counsel Mr. Kratky, who also represented the other defendants at trial.
[2] Like Mr. Kratky, the undersigned counsel lacks the benefit of the trial transcript in preparing this response. Counsel makes all factual assertions in this response in good faith and will confirm once a transcript is available.

three veniremen in this matter, Veniremen #2, 5, and 13. Each of these individuals indicated negative encounters with police or authority figures. Venireman #13 ultimately indicated the ability to impartially serve as a juror. On that basis, the Court struck for cause Veniremen #2 and #5 but denied Mr. Tate's request to strike Venireman #13 for cause. This early pattern of strike attempts directed at only black males formed the factual underpinning for counsel's *Batson* challenge and remains integral to understanding the Court's ruling finding a *prima facie* case for racial discrimination.

*Fourth*, **Mr. Tate then used his peremptory challenges on Veniremen #1 and #13, both African-Americans, making plain the racial basis of his strikes**. In his motion, Mr. Tate makes the astounding characterization of his peremptory challenges as 1:1 as between white veniremen and black veniremen. ECF Doc. 220, pg. 2 ("Subsequently, Defendants used one of its peremptory strikes against Juror Number 1, as well as Juror Number 21, who is white.") The Court is well aware that Mr. Tate had rather attempted to use three strikes for cause against African-Americans, followed by two peremptory challenges against this same racial group. Mr. Tate's omission of any mention of his cause or peremptory strikes it outrageous enough in its own right, but the mischaracterization of his strikes as somehow evenhanded across racial groups defies belief.

*Fifth*, **Mr. Tate's reliance on his objection to Venireman #21 lacks merit because at the time of the would-be peremptory strike, Venireman #21 could not have possibly been selected for the jury.** In his motion, Mr. Tate relies heavily on his final "peremptory challenge" to Venireman #21, a white male. Mr. Tate's objection to Venireman #21 is of no moment, because the highest numbered member of the venire that could have been seated was Venireman #15. A peremptory challenge used against an individual who could not possibly be empaneled is no peremptory challenge at all. It had no effect whatsoever—Mr. Tate may as well have indicated that he was using a peremptory challenge against the marshal or the court reporter. Mr. Tate's objection to the jury service of Venireman #21 is not properly considered a peremptory challenge at all.

3

Stated differently, Mr. Tate's characterization of Venireman #21 as "unlikely to be seated anyway based on sheer numbers", ECF Doc. 220, pg. 3, misses the point entirely. By the time the parties were issuing peremptory challenges, it should have been clear to Mr. Tate which jurors would be empaneled following peremptory challenges, and which would not. Venireman #21 was not only "unlikely" to be empaneled, there was no way he could have been reached. At best, this peremptory strike had no effect at all; at worst, it was a pretext to justify the peremptory strikes of Veniremen #1 and #13. Either way, because peremptory challenges are designed to secure a fair and impartial jury, and Mr. Tate's objection to Venireman #21 did not operate to affect the jury at all, it certainly cannot be used as the lone reason to overturn the Court's well-reasoned *Batson* ruling.

Counsel for Mr. Williams made a record of all the foregoing issues, and the Court agreed that the totality of the circumstances demonstrated Mr. Tate's deliberate efforts to use strikes for cause and peremptory challenges to remove African-Americans from the jury. On that basis, the Court set aside Mr. Tate's peremptory challenge to Venireman #1 and instead empaneled him as Juror #1, preserving the constitutional rights of both Mr. Williams and Juror #1 himself.

Finally, Mr. Tate makes an additional misstatement by characterizing Mr. William's *Batson* challenge as directed to Venireman #1 alone. ECF Doc. 220, pg. 2. Rather, the undersigned counsel for Mr. Williams objected to the peremptory strikes of both Veniremen #1 and #13. Venireman #13 had indicated that childcare would pose a concern, and had made additional statements during *vuir dire* that might arguably support a race-neutral finding for his dismissal, and so the Court allowed the peremptory challenge to this individual. Mr. Williams especially counseled for setting aside the peremptory challenge of Juror #1 primarily because Juror #1 had made no similar remarks in *voir dire*.

The Court properly ruled that Mr. Williams made a *prima facie* showing that Mr. Tate's peremptory strikes were made on the basis of race, Mr. Tate could not and still cannot articulate a

4

race-neutral reason for his use of strikes, and the Court properly set aside the peremptory challenge to Juror #1 and empaneled the jury for trial.

## LEGAL STANDARD

The trial court's *Batson* determination necessitates an awareness of the totality of the circumstances surrounding *voir dire*. *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008). There will seldom be much evidence on whether counsel's race-neutral reason should be believed, and "the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez v. New York,* 500 U.S. 352, 365 (1991). For this reason, "evaluation of [counsel]'s state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Id.* The trial court's decision on the ultimate question of discriminatory intent should thus be accorded great deference and only set aside if clearly erroneous. *Smulls*, 535 F.3d at 861; *United States v. Jones*, 245 F.3d 990, 992 (8th Cir. 2001); *United States v. Elliott*, 89 F.3d 1360, 1365 (8th Cir. 1996).

Mr. Tate suggests in his motion for new trial that the denial of a peremptory challenge is automatically reversible error. Doc. 220 at 8. This is flatly incorrect. The Supreme Court has disavowed the language in *Swain v. Alabama* that Mr. Tate cites for this proposition. *Rivera v. Illinois*, 556 U.S. 148, 160-61 (2009).

A federal court's erroneous denial of a peremptory strike is instead subject to harmless-error analysis. *Avichail ex rel. T.A. v. St. John's Mercy Health Sys.*, 686 F.3d 548, 552–53 (8th Cir. 2012). If nothing in the record suggests the juror was removable for cause or otherwise unqualified for jury service, the error is harmless. *Id.* at 553. Without more, the loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. *United States v. Martinez– Salazar,* 528 U.S. 304, 313 (2000). Even if the trial court's decision was erroneous, and here it decidedly was not erroneous, courts will not reverse for a "one-time, good-faith misapplication of *Batson*." *Rivera*, 556 U.S. at 160-61.

5

**ARGUMENT**

Racial discrimination during jury selection "raises serious questions as to the fairness of the [judicial] process itself." *Smulls v. Roper*, 535 F.3d 853, 858 (8th Cir. 2008) (internal quotations omitted). A party's use of racially motivated strikes against potential jurors not only undermines the integrity of the judicial system, it denies both the opposing party and the excluded venireperson their right to equal protection under the Constitution. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619 (1991). Thus, in order to combat racial discrimination in jury selection, *Batson* and its progeny call for a three-step process for challenging a party's peremptory strike as racially motivated. "First, a [party] must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the [opposing party] must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the [initial party] has shown purposeful discrimination." *Miller-El v. Cockrell*, 537 U.S. 322, 328–29 (2003).

**I. Mr. Williams succeeded in his *prima facie* showing that Mr. Tate's peremptory challenges to Veniremen #1 and #13 were based on race.**

**A. Mr. Tate's meaningless "peremptory challenge" of Venireman #21 has no bearing on this matter because it did not operate to exclude a prospective juror.**

With a panel of twenty one veniremen and a jury of only eight jurors, not every member of the *venire* may be seated for jury service. As is customary and was understood by counsel for all parties to this matter, the Court intended to seat the jury beginning with the first member of the *venire* eligible to serve up until the last member of the *venire* eligible to serve. For example, if neither Mr. Tate nor Mr. Williams used any strikes for cause nor any peremptory challenges, then Veniremen #1-8 would be empaneled and sworn as Jurors #1-8. Here, Mr. Tate successfully struck two veniremen for cause, meaning that jury service became a possibility for Veniremen #9-10. Mr. Williams used his three peremptory strikes with no objection from Mr. Tate. Thus, the highest-numbered member of the

venire panel for which jury service became a possibility was Venireman #13. Mr. Tate sought to use his peremptory challenges on Veniremen #1 and #13, further objecting to the jury service of Venireman #21. Mr. Tate did not use a peremptory strike (or a strike for cause) against any white member of the venire panel with any chance of being seated for jury service.

In light of this fact, it is odd that Mr. Tate has chosen to make the meaningless peremptory strike of Venireman #21 the focal point of his motion for new trial, even going so far as to characterize the strikes used during the empaneling process as an evenhanded 1:1 effort, removing only one white venireman and another black venireman. ECF Doc. 220, pg. 2 ("Subsequently, Defendants used one of its peremptory strikes against Juror Number 1, as well as Juror Number 21, who is white."), Leaving aside that a characterization whereby Mr. Tate evenly applied his strikes across racial groups is plainly untrue, reliance on Venireman #21 as the centerpiece to undercut a showing of racially motivated strikes is further absurd because the objection to jury service by Venireman #21 had no effect at all.

The purpose and history of peremptory strikes is to allow parties to prevent certain veniremen from serving as jurors. *Smulls*, 535 F.3d at 858 ("The nature of a peremptory strike … [allows] counsel to remove a potential juror"). Here, Mr. Tate's objection to Venireman #21 did not alter the jury in any way, and it certainly did not remove Venireman #21 from the jury. Mr. Tate should have been aware of this fact at this juncture of the proceedings, and both Mr. Williams and the Court pointed out this fact while the *Batson* record was being made. Mr. Tate's objection to Venireman #21 is not properly considered a peremptory strike at all, and the Court should certainly disregard Mr. Tate's pretextual reliance on this would-be peremptory strike as cause for a new trial.

> **B.    Mr. Tate repeatedly sought to exclude African-Americans and only African-Americans from the jury in this matter both through his strikes for cause and his peremptory challenges.**

In total, Mr. Tate succeeded in removing three out of the five African-American members of the venire panel. Mr. Tate attempted to use a peremptory challenge to remove a fourth African-

7

American from jury service, Juror #1. This singular, targeted use of strikes for cause against a single racial group elicited an objection from counsel for Mr. Williams under *Batson*. The Court properly sustained this objection and set aside Mr. Tate's peremptory challenge of Juror #1.

The very <u>pattern</u> of removing jurors based on race first articulated in *Batson* is essentially absent from Mr. Tate's motion. Seemingly to avoid the obvious conclusion that the Court properly exercised its discretion in this matter, Mr. Tate neglects to mention that he struck two black veniremen for cause, attempted to strike a third, and then at the peremptory challenge stage in fact sought to remove a black venireman separate and apart from Juror #1. <u>ECF Doc. 220, pg. 2</u> ("Subsequently, Defendants used one of its peremptory strikes against Juror Number 1, as well as Juror Number 21, who is white."). In *Moran v. Clarke*, for instance, "Moran directed all of his challenges—both for cause and peremptory—at the four black members of the venire." 443 F.3d 646, 652 (8th Cir. 2006). The Eighth Circuit held that this established a prima facie case under *Batson*. *Id.* Here, Mr. Tate used his strikes for cause solely against black members of the venire. Critically, the Court overruled Mr. Tate's strike for cause of Venireman #13, itself a warning to Mr. Tate that perhaps his pattern of striking solely black veniremen had been detected. Undeterred, Mr. Tate nonetheless asked the Court to strike Veniremen #1 and #13, both African-Americans, with his peremptory challenges. He wasted a third peremptory challenge "removing" a venireman who was no longer in play to be empaneled.

Furthering counsel's *Batson* challenge and the Court's ruling, Juror #1 made no statements whatsoever that disqualified himself from jury service in this matter. Notwithstanding Mr. Tate's misstatements in this respect, there was no strike for cause issued against Venireman / Juror #1, because there was no basis for a strike for cause. In reality, Juror #1 patiently endured lengthy and penetrating *voir dire* questioning by counsel for Mr. Tate. <u>If anti-authority or anti-police sentiment had existed, which they did not, Mr. Tate's questioning would have elicited any relevant disqualifying sentiments to serve on the jury in this matter</u>. Respectfully, the fact that counsel for Mr. Tate has

8

invented in his memory a strike for cause against Venireman / Juror #1 itself underscores that the pattern of strikes was racially motivated.  Other African-American members of the venire panel expressed mistrust of authority and indicated negative encounters with police, itself a sad commentary on the interplay between race and authority, but Juror #1 did nothing of the sort.  That opposing counsel collapsed these statements during *voir dire* and attributes them to Juror #1 only underscores that the attempted strike was racially motivated in the first place.

The Court correctly found that a *prima facie* case for racial discrimination had been made based on the foregoing record, and it appropriately moved to the next phase of the *Batson* process.

**II.   Mr. Tate failed to present a race-neutral explanation for his peremptory challenges to Veniremen #1 and #13.**

**A.   Mr. Tate could not articulate a race-neutral reason for his peremptory challenges to Veniremen #1 and #13 because none existed.**

Mr. Tate could not articulate a race-neutral reason for his peremptory strike of Venireman / Juror #1 for a very simple reason: none exists.

Again, Mr. Tate's misrepresentation of the record to the effect that Venireman #1 made statements indicating "a mistrust of authority figures in general, and law enforcement in particular" speaks volumes as to Mr. Tate's confidence that he can offer a race-neutral reason for his pattern of racially motivated strikes in this matter. ECF Doc. 220, pg. 2.  Venireman / Juror #1 spoke sparingly during the *voir dire* process in this matter, but he readily admitted having an incarcerated sibling and yet plainly stated that this would not color his service as a juror in this matter.  The Court appropriately recognized that no race-neutral basis to strike Venireman #1 existed, and so the Court set aside this attempted peremptory challenge.

Mr. Tate could not articulate a race-neutral reason for his peremptory challenge to Juror #1 because none exists.  Mr. Tate had his opportunity to establish a race-neutral reason, but in the moment the only evidence he could advance is that Juror #1 was disfavored by his clients, and that

9

he indicated truthfully that he had an incarcerated relative. Particularly after having used every possible strike for cause and peremptory challenge against African-Americans, this was not viewed as a plausible explanation. This is particularly true because Juror #1 clearly articulated that he could be an impartial juror notwithstanding the incarcerated relative. "[E]valuation of [counsel]'s state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Hernandez*, 500 U.S. at 365. The trial court's decision on the ultimate question of discriminatory intent should thus be accorded great deference and only set aside if clearly erroneous. *Smulls*, 535 F.3d at 861; *Jones*, 245 F.3d at 992; *Elliott*, 89 F.3d at 1365. Here, the trial court had presided over a spirited *voir dire* session during which numerous veniremen shared their life experiences and discussed the interplay between race and authority. Juror #1 did not make any statements that would reveal any bias at all, which is the primary reason why Mr. Tate did not move to strike him for cause and could not articulate a race-neutral reason for the peremptory challenge at issue. The Court likewise presided over relentless use of strikes for cause and peremptory challenges against African-Americans. The state of mind evidenced by demeanor and credibility are peculiarly within the Court's province, and its decision should not be disturbed, particularly on the record before the Court, which is made up principally of misstatements. The Court properly conducted its *Batson* examination in this matter, and it correctly set aside the peremptory challenge to Juror #1. Mr. Tate's motion for new trial should thus be denied.

      **B.    Mr. Tate cannot rely on his own race as justification for racially motivated strikes of jurors.**

The race of either party need not factor into a finding of purposeful discrimination under a *Batson* analysis because the finding turns simply on the striking attorney's racial animus. Although *Batson* contemplated the harm caused to a party by excluding jurors of that party's race, "*Batson* [also] recognized that … discriminatory use of peremptory challenges harms the excluded jurors and the community at large." *Powers v. Ohio*, 499 U.S. 400, 406 (1991). Among other things, *Batson* recognized the importance of the opportunity to serve on a jury and held that it could not be denied to a juror

10

based on their race. *Id.* This protection is focused on the juror at issue and is independent of the races of either party in the litigation. Thus, courts have held that a finding of purposeful discrimination is not precluded by the fact that the party raising the *Batson* challenge is a different race than the excluded venireperson. *See, e.g., Long v. Norris*, No. 5:06CV 00238 JLH JFF, 2007 WL 2021839, at *10 (E.D. Ark. July 10, 2007), *aff'd*, 295 F. App'x 859 (8th Cir. 2008) ("[A] defendant's claim that the prosecution engaged in purposeful discrimination on the basis of race in the exercise of peremptory challenges is not precluded by the fact that the defendant's race differs from that of the excluded venirepersons"); *Broom v. Pash*, No. 4:11CV1263 NCC, 2014 WL 4440980, at *4 (E.D. Mo. Sept. 9, 2014) (upholding the decision of a Missouri appellate court that held that the "particular race of a defendant or a venireperson is irrelevant to the question whether a peremptory strike is racially motivated and therefore violates the Equal Protection Clause"). It follows that a finding of purposeful discrimination would similarly not be precluded by the fact that the party opposing the *Batson* challenge is the same race as the excluded venireperson. The trial court is simply looking for "racial animus in [counsel]'s decision to strike" the juror. *United States v. Hampton*, 887 F.3d 339, 343 (8th Cir. 2018). Here, there is abundant evidence of this racial animus.

    **C.**    **Mr. Tate's *post hoc* explanation for his peremptory challenges has no merit, and he cites no law in support.**

The harmless error analysis warranted for the Court's clearly-supported *Batson* ruling reveals that as long as, according to the record, the juror was not challengeable for cause and was otherwise qualified, no reversible error has occurred *See Ross v. Oklahoma,* 487 U.S. 81, 86–91 (1988) (if no jurors are removable for cause, there is no violation of litigant's right to an impartial jury or due process); *Barnes v. Griffith*, No. 415CV01569SNLJSPM, 2019 WL 1371571, at *9 (E.D. Mo. Feb. 20, 2019) (upholding state court's finding of harmless error when erroneous *Batson* ruling did not lead to the empaneling of a juror that was biased or otherwise unqualified to serve on the jury); *see McDonough*

11

*Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 556 (1984) ("*Voir dire* examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors.")

Mr. Tate's groundless claim that Juror #1's dress or tattoos reveal him to be unqualified for jury service in this matter have no support in law and serve only to underscore the conclusory, racially motivated basis for Mr. Tate's challenges to the venire panel.

### III.  The Court correctly determined that Mr. Tate's proffered justification for the peremptory challenge was not persuasive.

The Court correctly concluded on the facts before it that purposeful discrimination occurred. Mr. Tate struck only black veniremen, leaving aside his wasted strike of Venireman #21.  Mr. Tate removed not a single white venireman from actual jury service.  Mr. Tate made certain to remove Venireman #13 from jury service even after the Court denied a strike for cause, using a peremptory challenge on this venireman.  Mr. Tate sought to remove Venireman / Juror #1 by peremptory challenge, but in the instant motion has invented a strike for cause against this juror that never occurred, buttressing the false record with fake statements by this juror during the venire process.

Juror #1 made no statements—none—that might disqualify himself from service as a juror in this matter.  Mr. Tate, or rather his counsel, by contrast took a series of actions making plain the racial basis of his cause and peremptory strikes.  Mr. Tate most certainly could not articulate a race-neutral reason for his peremptory challenge, and instead has resorted to misrepresenting the record to support his desired outcome.  The Court appropriately set aside the peremptory challenge to Juror #1 based on facts uniquely within its province to examine, and its decision should not be disturbed.  As a result, the Court should deny Mr. Tate's motion for a new trial.

WHEREFORE, Mr. Williams respectfully requests that the Court deny Mr. Tate's motion for a new trial.

Dated: November 12, 2021	Respectfully submitted,

*/s/ Matthew P. Diehr*
Matthew P. Diehr, #61999MO
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1505
Matthew.Diehr@huschblackwell.com

**Counsel for Plaintiff Jared Martel Williams**

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2021, I caused to foregoing to be filed electronically with the Clerk of the Court and to be served via electronic mail upon all counsel of record.

*/s/ Matthew P. Diehr*
Matthew P. Diehr, #61999MO